UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-857-H

WILLIAM WEBB                                                                                           PLAINTIFF

V.

HUMANA INC., &
HUMANA INSURANCE CO.                                                                          DEFENDANTS

**MEMORANDUM OPINION**

Plaintiff, William Webb ("Webb"), filed suit against Humana Inc. and Humana Insurance Co. ("Defendants"), alleging disability discrimination in the forms of disparate treatment, failure to accommodate and retaliation, in addition to wrongful discharge and intentional infliction of emotional distress, all under Kentucky law. Defendants moved for summary judgment on all claims. This case presents some difficult analytic challenges because the consequences of Webb's alleged disability–his frequent absences from work–are also the reason for his termination. For the reasons that follow, the Court will sustain their motion.

I.

Webb began his employment with Defendants on December 4, 2006, as a customer care specialist. His duties included resolving customer inquiries and concerns. On January 19, 2007, Webb completed commercial calls training for new employees and Defendants assigned him to the Auto Unit. Webb began missing work on February 22, 2007, after being hospitalized at Jewish Hospital. Several weeks later, doctors diagnosed Webb with Multiple Myeloma cancer. Webb informed his supervisor Ms. Hack ("Hack"), of his diagnosis and of his treatment schedule. Due to his continued treatment and its effects, Webb received short-term and long-

term disability benefits under the Humana employee benefit plan from February 24, 2007, until his eventual return to work on August 18, 2008.

Webb spoke with Hack during his leave in April of 2008 and informed her that his next scheduled treatment with his specialist was August 12-14, 2008. In early August, when Webb's long-term disability was near its end, Hack informed him that the new employee training class would begin on August 11 and he should participate in it. Webb reiterated that he must see his specialist from August 12-14. Hack said that he could return to work on August 18, 2008, and join the training a week late. Hack then joined William Brown ("Brown"), Webb's new supervisor, to the call and informed him of the arrangement.

On August 18, Webb returned to work and joined the training as planned. He informed Hack that he had not been released for full work duty. He provided documentation from the doctor confirming his part-time release as well as documentation concerning a future treatment scheduled to take place in Arkansas in December. Also, he told her that he would be receiving monthly blood work and chemotherapy from a local doctor. Hack told him that none of this would be a problem.

Webb missed work for the first time since his return on September 11, 2008, due to a doctor's appointment. Brown gave Webb a warning regarding the absence, and, according to Webb, asked for a promise that he would not take sick absences again. Webb responded that he could not make such a promise and that he was offended by the comment. Webb successfully completed training in October. He missed work again on October 23rd and 24th due to complications from his cancer. In fact, Webb claims that all of his absences were related to his cancer. Webb used his accrued sick time for the absences. According to Webb's affidavit, after

2

the October absences, Brown harassed him at work and he "complained and voiced [his] opposition" to the harassment. Webb's affidavit does not say exactly when he complained, nor does it say to whom the complaints were made. Webb describes only one instance of harassment in any detail.

On November 4, 2008, Brown discussed attendance issues with Webb. At that time he also placed Webb on a Competency and Contribution Improvement Plan ("CCIP") because Webb violated a company-wide policy by having three absences in less than ninety days. The CCIP noted Webb's three absences and it contained a clause saying that he could not have any more absences prior to January 31, 2009. According to Webb, Brown "constantly harassed [him] about signing the CCIP," and that when he asked to speak with someone else about it, Brown told him that he could not. Webb stated on several occasions that he did not want to sign the CCIP. He says that Brown threatened to terminate him if he did not sign the CCIP. Nevertheless, Webb did sign the CCIP. Webb says that he told a coworker, Larry Busse, about the harassment, and that he approached Hack and requested a meeting to talk about the situation. Hack then told Brown that Webb had approached her and requested a meeting. Webb claims that Brown warned him about making complaints to anyone other than him. Webb never had the meeting with Hack.

After being placed on the CCIP, Webb reminded both Hack and Brown that he would need time off during the week of December 15, 2008, to undergo treatment in Arkansas. Webb had no more sick leave, and Hack and Brown "went out of their way" to try and get approval for the time off. Webb said, "they would try to extend that benefit to me in some...way or another. I...would come in, come into work early or I stayed work [sic] later to accumulate hours."

Ultimately, Webb missed work from December 15-18, and returned to work on December 19. Defendants did not penalize Webb for the time off.

Webb was hospitalized with bronchitis on December 29, 2008. He missed work from December 29-31. Brown called Webb on December 31 to terminate Webb's employment. Although he conferred with Defendants' Human Resources department, Brown made the decision on his own authority. Webb asked Brown about his options. Brown explained that he could either resign and remain eligible for rehire or be terminated and considered ineligible for rehire. According to Webb, Brown also said that Webb would not be able to return to work to retrieve his personal belongings if he did not agree to resign. On December 31 Webb agreed to resign.

Webb filed an action in Jefferson Circuit Court asserting disability discrimination claims based on disparate treatment and failure to accommodate under the Kentucky Civil Rights Act ("KCRA"), *KRS Chapter 344, et seq.*, as well as wrongful discharge and intentional infliction of emotional distress claims under Kentucky common law. He later amended the complaint, adding a retaliation claim under the KCRA. Defendants removed to this Court and subsequently moved for summary judgment on all claims.

## II.

Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c)*. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). Once the initial showing by the moving party has been made, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (quoting *Fed.R.Civ.P. 56(e)*). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d, 357, 361 (6th Cir. 2001).

The language of the KCRA mirrors that of federal anti-discrimination law, and courts have interpreted the Kentucky Act consistently therewith. *See Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Brohm v. JH Properties, Inc.*, 149 F.3d 517, 520 (6th Cir. 1998). Therefore, the Court will analyze Plaintiff's KCRA claims under the framework provided by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. Disability discrimination claimants can proceed under the separate legal theories of disparate treatment and failure to accommodate. The two theories have some overlapping elements and may be asserted in the alternative as Webb has chosen to do so here. The Court will consider each of these claims separately in Sections III and IV that follow.

### III.

A prima facie case for Webb's disability discrimination claim based on disparate treatment requires a showing that: (1) he is disabled; (2) he is otherwise qualified for the position; (3) he suffered from an adverse employment decision; (4) the employer knew or had reason to know of his disability; and that (5) similarly situated non-protected employees were treated more favorably.[1] *Hopkins v. Electronic Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir.

---

[1] The prima facie showing is necessary because Webb does not have direct evidence of discrimination.

1999); *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995).

Defendants do not dispute that Webb satisfies the third and fourth elements of the prima facie case. There are, however, serious questions whether Plaintiff has established the first and second elements. More important, Plaintiff has no evidence establishing the fifth element. The Court will discuss each in turn.

A.

For our purposes, the ADA defines a disability as a physical or mental impairment that substantially limits one or more of the major life activities.[2] 42 U.S.C. § 12102(1). Though no one disputes that Webb's cancer is a serious medical condition which impairs Webb in a variety of ways, the more relevant issue is whether it substantially limits a major life activity. Webb says that it substantially limits major life activities, such as working, performing manual tasks, thinking and concentrating, walking, using the restroom, driving a vehicle, and eating.

The Equal Employment Opportunity Commission ("EEOC") regulations guide our interpretation of the ADA. *Toyota Motor Mfg. Kentucky, Inc. v. Williams*, 534 U.S. 184, 193 (2002). They define "substantially limits" as: (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. § 1630.2(j)(1)(i)-(ii)

---

[2] Although Webb's Amended Complaint also alleges that he was "regarded as" having a disability, he argues in his brief that he has an actual disability, so the Court will disregard the "regarded as" component of his claim.

6

(1991).³  Furthermore, factors relevant to this determination include: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact resulting from the impairment.  29 C.F.R. § 1630.2(j)(2)(i)-(iii) (1991).

Webb asserts the legal conclusion that his cancer substantially limited his ability to perform manual tasks and to think and concentrate.  Such conclusory statements, however, fall short of evidentiary sufficiency.  For instance, his affidavit asserts only that, "at times," it was difficult to walk, use the restroom, drive, and consume food.  To say that one has difficulty performing a major life activity at certain times, however, does not amount to a substantial limitation.  The Sixth Circuit has held that "any impairment that only moderately or intermittently prevents an individual from performing major life activities is not a substantial limitation under the [ADA]."  *Mahon v. Crowell*, 295 F.3d 585, 590-91 (6th Cir. 2002).  Based upon the complete absence of evidence, Plaintiff has not met his burden of showing that he was substantially limited in his ability to perform any of these activities.

Whether or not the cancer significantly restricted Webb's ability to work is a closer question.⁴  A plaintiff who claims to be disabled because a condition substantially limits his ability to work must show that he is "significantly restricted in [his] ability to perform either a

---

³ Congress amended the ADA effective January 2009, enacting the ADA Amendments Act ("ADAAA"). The EEOC regulations were amended as well.  The amended regulations altered the "substantially limits" definition, explicitly rejecting the "significantly restricted" language from the prior regulations and noting that "substantially limits" shall be construed broadly.  29 C.F.R. § 1630.2(j)(1)(i)-(ii) (2011).  Nonetheless, the Court will analyze Plaintiff's claim under the ADA and the corresponding EEOC regulations because Webb's claims arose prior to the ADAAA's effective date and the ADAAA is not retroactive.  *See Milholland v. Sumner Cnty Bd. of Educ.*, 569 F.3d 562, 565 (6th Cir. 2009).

⁴ The Sixth Circuit accepted working as a legitimate major life activity in a case similar to this one, where the defendant did not contest the idea that working is a major life activity and the plaintiff was unable to establish a substantial limitation in any other major life activity.  *Mahon*, 295 F.3d at 590.

class of jobs or a broad range of jobs in various classes as compared to the average person with comparable training, skills and abilities." *McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir. 1997) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Webb's cancer caused him to have 10 absences from work over a four-and-a-half month period, six of which seem to have been unapproved and unforseen. Between December 15 and December 31, 2008, Webb was absent for seven days. Although Webb's cancer is in remission, he still receives monthly chemotherapy which weakens the immune system, making him more susceptible to illness and absences. One might reasonably assume that such a pattern of unforeseen and unexcused absences would continue for several more months at least.

Webb seems to claim that he is limited in performing the broad class of jobs which require regular attendance and which prohibit unlimited chances. This is an unusual and quite broad job disability description. Perhaps too broad. The reason is that such a job clarification tends to define both Webb's disability and his lack of qualification to hold a job. Likely, the question of Webb's disability would be one for the jury. In light of the fact that Webb's claim ultimately fails on other grounds, the Court will assume that he has established that his cancer substantially limits his ability to work.

B.

To show that he is "otherwise qualified," a plaintiff must articulate a reasonable accommodation and then establish his ability to perform the essential job functions with the accommodation. *See Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781

(6th Cir. 1998); 42 U.S.C. § 12111(8).[5] The employee's initial burden need not be onerous. *Id*. Webb argues that a defined period of medical leave is a reasonable accommodation that was available to him.[6] To show that he is able to perform the essential job functions with such an accommodation, Webb argues that, despite his absences, Defendants never complained about his work performance and that he often received positive work reviews. The Court will accept that Webb has met his initial burden to establish that he is "otherwise qualified."

"If the employee establishes that a reasonable accommodation is possible, then the employer bears the burden of proving that the accommodation...imposes an 'undue hardship' on the employer." *Id.* (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 n.12 (6th Cir. 1996)). Defendants have not attempted to factual rebut the accommodation issue. Rather, they rely on a quote from *Gantt v. Wilson Sporting Goods, Co.,* 143 F.3d 1042 (6th Cir. 1998), to show that providing Webb with leave beyond what their policy allows is an unreasonable accommodation as a matter of law. They say that *Gantt* is the source of the Sixth Circuit rule that "'[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA.'" *Gantt*, 143 F.3d at 1047 (quoting *Tyndall v. National Education Centers, Inc.*, 31 F.3d 209, 213 (4th Cir. 1994)).

The Sixth Circuit rule, however, is not so clear cut. A few months after the *Gantt* decision, the Sixth Circuit rejected the presumption that "uninterrupted attendance is an essential

---

[5] Again, the Court notes the seemingly inherent conflict that exists when work is the major life activity in question. A plaintiff must first show that he is substantially limited in his ability to perform a broad class of jobs; but that with an accommodation, he can perform the essential functions of his job and thus, is qualified.

[6] There is no evidence that Webb actually made a request for a defined period of medical leave. However, when attempting to establish a prima facie case of disparate treatment, a plaintiff can propose a reasonable accommodation for the first time at the pleadings stage.

9

job requirement," and held that "a medical leave of absence can constitute a reasonable accommodation under appropriate circumstances." *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 782-83 (6th Cir. 1998). The Sixth Circuit stressed the importance of the employer meeting its burden of showing undue hardship. *Id.* at 782. A defined period of medical leave, even if it causes a plaintiff to take leave in excess of what an employer policy allows, could be reasonable, and the employer must show undue hardship in allowing it.[7]

Subsequent to *Gantt* and *Cehrs*, the Sixth Circuit has found that a plaintiff was not qualified "due to his excessive absenteeism." *Brenneman v. Medcentral Health Sys.*, 366 F.3d 412, 418-20 (6th Cir. 2004). What distinguishes that case from the case at hand, however, is that the defendant in *Brenneman* provided evidence that the plaintiff was unable to meet the requirements of his job and that his absences imposed an undue burden. *Id*. Here, Defendants neither criticize Webb's job performance nor claim an undue burden by allowing him additional leave for his cancer-related absences. Thus, Webb has met his burden under this element of the prima facie case.

C.

Webb's disability discrimination claim ultimately fails because he has not established the fifth element of the prima facie case, which is that Humana treated similarly-situated non-disabled employees more favorably.[8] In fact, Webb made no serious attempt to argue the issue. Webb's affidavit stating that "[A]lthough Humana had accommodated other disabled

---

[7] The Court notes that it would be extremely difficult to show that an indefinite period of medical leave is a reasonable accommodation, particularly when a plaintiff has already used all of the leave allowed by an employer's policy.

[8] Plaintiff did not argue any other method for showing disparate treatment.

employees, the Defendants failed and refused to reasonably accommodate me," contains no facts establishing it. Webb produced no evidence of this and made no material argument concerning it. Absent such evidence, the Plaintiff is without the minimum evidence to establish the plausibility of his claim.

Although this is the last element of a prime facie case, it is an essential one. The Court has carefully considered the evidence of it in these circumstances. It is plausible that because Defendant terminated Webb for missing work, the precise and direct consequences of his disability, that this itself establishes a prima facie case. To demonstrate such a plausibility, however, Webb must show that similarly-situated non-disabled persons were not terminated for absences in similar circumstances. Absent such evidence, the only conclusion is that Humana was simply following its own well-established absentee rules.

Even if Webb could prove the fifth element and establish the prima facie case, his claim would fail because he has not shown that Defendants' proffered reason for his termination was pretext for discrimination. The Court undergoes a more extensive pretext analysis below in Section V when assessing Webb's retaliation claim.

IV.

The Court will next consider Plaintiff's failure to accommodate claim.[9] In the Sixth Circuit, "[a] disabled employee who claims that he or she is otherwise qualified with a reasonable accommodation 'bears the initial burden of proposing an accommodation and showing that that accommodation is *objectively reasonable*.'" *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 633-34 (6th Cir. 1998) (citing *Monette*, 90 F.3d at 1183) (emphasis added). Once

---

[9] In considering this claim, the Court is assuming that Plaintiff can establish that he has a disability. The Court reiterates that the disability question is a close one, and that it is probably a jury question.

the plaintiff does so, the employer then has the burden of persuasion to show that an accommodation would impose undue hardship. *See Monette*, 90 F.3d at 1183-84; 42 U.S.C.A. § 12112(b)(5)(A).

Webb's accommodation claim fails for lack of a simple but essential fact; he never proposed an accommodation. Webb argues that he requested a defined period of medical leave. However, the Court finds no evidence of such a request. According to Webb's deposition testimony, when he spoke to Brown on December 31, 2008, he informed Brown that he was too ill to work and asked Brown to explain his options. Such a request "to explain options" does not amount to a specific request. At best, it is a request for an accommodation by way of an indefinite period of sick leave because Webb gave no indication as to when he could return. Generally, the rule seems to be that an employer is not required to keep an employee on staff indefinitely in the hope that the employee will someday be able to return to his job. *See Walsh v. UPS*, 201 F.3d 718, 725-26 (6th Cir. 2000). Thus, an indefinite leave amounts to an unreasonable accommodation as a matter of law.

There is no evidence that Webb asked for a defined period of medical leave or that he made a specific request for any other sort of accommodation.[10] Such a request and Defendants' denial of it, if that had been the case, are essential predicates of an accommodation claim. Because Webb made no specific accommodation request, the Court is, of course, unable to test whether such a request would have imposed unreasonable burdens on Defendants.

V.

---

[10] Interestingly, the one time that Webb seemed to make a valid accommodation request – when he asked for a specific week off for his December treatment in Arkansas – Defendants accommodated him.

Next, the Court will assess Webb's retaliation claim. Webb alleges that his termination was retaliation for opposing the harassment that he received at the hands of Brown.[11]

The Sixth Circuit has adopted the Title VII retaliation claim framework for analyzing ADA retaliation claims. *See Walborn v. Erie County Care Facility*, 150 F.3d 584, 588-89 (6th Cir. 1998). To establish a prima facie case of retaliation, a plaintiff must establish that: (1) he engaged in activity protected by the Act; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). Plaintiff's burden to establish a prima facie case is not onerous and is easily met. *Id.* at 565-66 (quoting *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997)). Once a plaintiff makes a prima facie case, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the adverse employment action. Once the defendant meets its burden, the plaintiff must show that the proffered reason was a pretextual.

It is unclear whether Webb can prove the first and fourth elements of the prima facie case. Regardless, even assuming that he can do so, Webb has not presented enough evidence to prove pretext. The Court will discuss each element in turn.

---

[11] The Court does not have to make a determination as to whether Plaintiff is a qualified individual with a disability in order to assess his retaliation claim. *See Baker v. Windsor Republic Doors*, Nos. 08-6200/09-5722/09-6555, 2011 U.S. App. LEXIS 4810, *35 n. 8 (6th Cir. Mar. 8, 2011) (unpublished) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997)).

A.

An individual engages in a "protected activity" under the ADA when "such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). Webb argues that he engaged in a protected activity by opposing Brown's harassment. In the case of an "opposition" claim, the opposed behavior need not be unlawful, but Webb must have reasonable and good faith belief that the opposed practice is unlawful. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000); *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1312-13 (6th Cir. 1989). The Court finds that Webb's belief was reasonable and in good faith. The remaining issue is whether Webb's opposition took an acceptable form.

Webb argues that "he lodged a formal Complaint of disability discrimination to human resources" concerning Brown's allegedly unlawful conduct. However, the evidence does not establish that there was any such complaint. During his deposition, Webb admitted that he never complained to management and his own affidavit does not say that he complained to human resources. Based on the deposition and the affidavit, it appears that Webb did complain to a coworker, Larry Busse, about being harassed into signing the CCIP. There is no evidence, however, that Brown knew about Webb's complaint's to Busse. However, Webb argues that on the day that Brown harassed him about signing the CCIP, he told Hack that he needed to have a meeting with her. That meeting never occurred because after Webb requested the conversation with Hack, who then told Brown about the request, Brown subsequently warned him about making complaints. The question is whether asking to meet with management constitutes

"opposition" under the ADA.

The Supreme Court and this Court have interpreted "opposition" claims broadly. Recently, in arguing that the word "oppose" should be interpreted broadly, the Supreme Court said that "'[o]ppose' goes beyond 'active, consistent' behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it." *Crawford v. Metro. Gov't of Nashville & Davidson County*, 129 S. Ct. 846, 850 (2009). Even more recently, this Court held that both reporting to management that one had become a target of harassment and refusing to sign a document releasing a defendant of liability constituted protected activities. *Frederick v. Oldham County Fiscal Court*, No. 3:08-CV-401-H, 2010 U.S. Dist. LEXIS 91605, *39-42 (W.D. Ky. Sept. 2, 2010). In doing so, the Court noted that "the EEOC has defined protected activity rather broadly, identifying numerous forms of protected opposition, including 'complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices ... and opposing unlawful acts by persons other than the employer – e.g., former employers, union, and co-workers.'" *Frederick*, 2010 U.S. Dist. LEXIS 91605 at *40 (quoting *Johnson*, 215 F.3d at 579).

It is an extremely close question, but given the broad interpretation of "oppose" by the Supreme Court, this Court, and the EEOC, Webb's meeting request may constitute a protected form of opposition to behavior that he believed unlawful.

B.

Assuming that Webb's meeting request is a protected activity, he must establish a causal link between the protected activity and his termination. With regard to the fourth element of the

prima facie case, "[A] causal link can be shown by either of two methods: (1) through direct evidence; or (2) through knowledge coupled with a closeness in time that creates an inference of causation." *Nguyen*, 229 F.3d at 566 (citing *Parnell v. West*, No. 95-2131, 1997 U.S. App. LEXIS 12023, *2 (6th Cir. May 21, 1997) (unpublished)). However, "temporal proximity in the absence of other evidence of causation is not sufficient to raise an inference of a causal link." *Id*. Webb's request to meet with Hack took place on November 4, 2008, and Webb was terminated less than two months later on December 31, 2008.

Here, the closeness in the proximity of the meeting request and the termination is probably enough to create an inference of causation. Moreover, Brown, who ultimately terminated Webb, allegedly threatened him for attempting to meet with Hack. These facts certainly suggest a causal link between his protected activity and the adverse employment action.

C.

Assuming that Webb can establish a prima facie case, the burden then shifts to Defendants to proffer a legitimate, nondiscriminatory reason for Webb's termination. Defendants always have averred that Webb was terminated for violating the CCIP which incorporates the company absentee policies. Termination for excessive absences is certainly a valid legitimate, nondiscriminatory reason.

Webb must establish that this explanation was pretextual in these circumstances. A plaintiff can do so by showing: (1) that the proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate his discharge, or (3) that it was insufficient to motivate discharge. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Webb limits his arguments to the second of these. "[T]he plaintiff may not simply rely

16

upon his prima facie evidence but must, instead, introduce additional evidence" of discrimination. *Id.* In the Sixth Circuit, a plaintiff can show such circumstances and establish pretext by showing that he was treated differently from other employees who were similarly situated in all relevant aspects. *See Weigel v. Baptist Hosp. of E. Tenn.*, 302 f.3d 367, 378-79 (6th Cir. 2002); *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

Webb has not presented any evidence that he was treated differently from similarly situated employees. Such evidence would be essential to show pretext. He admitted in his deposition that both Brown and Mack went out of their way to accommodate his foreseen absences. After signing the CCIP stipulating that he could not have any more unexcused absences, Webb continued to accumulate unexcused absences and was fired only after missing his seventh day of work in sixteen days. There is no indication that Brown was waiting for an opportunity to fire Webb. Webb claims that Brown was out to get him for making complaints. However, such a claim merely reiterates other elements of the prima facie case; it does not show or suggest different treatment. Consequently, Webb's retaliation claim must fail for failure to establish pretext.

VI.

The only remaining claims are wrongful discharge and intentional infliction of emotional distress, both of which are Kentucky common law claims. This Court has noted the "well-accepted law in Kentucky that both [wrongful discharge and intentional infliction of emotional distress] claims are preempted by the Kentucky Civil Rights Act where the basis of the wrongful discharge claim is the same as the basis for a claim under the act." *Spagnola v. Humana, Inc.*, No. 3:09-CV-235-H, 2010 U.S. Dist. LEXIS 739, * 26 (W.D. Ky. Jan. 6, 2010);

17

*See also Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985); *Wilson v. Lowe's Home Center*, 75 S.W.3d 229, 239 (Ky. Ct. App. 2001).

Webb disputes only that his intentional infliction of emotional distress claim is not preempted. There is no doubt, however, that the KCRA does preempt an intentional infliction of emotional distress claim. In an attempt to provide further clarification regarding the scope of KCRA-based preemption of Kentucky common law claims, the Kentucky Court of Appeals held that it is a "well-established principle that when a plaintiff prosecutes a statutory discrimination claim under the KCRA and a common law claim of IIED, the former preempts the latter." *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 286 (Ky. Ct. App. 2009). As such, the Court holds that the KCRA preempts Webb's wrongful discharge and intentional infliction of emotional distress claims.

The Court will enter an order consistent with this Memorandum Opinion.

cc:     Counsel of Record